UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

IMAD FAIEZ HAMDAN                                             CIVIL ACTION

VERSUS

TIGER BROTHERS FOOD MART, INC.                  NO.:15-00412-BAJ-EWD

RULING AND ORDER

Before the Court is a **Motion for Default Judgment (Doc. 12)**, filed by Plaintiff Imad Faiez Hamdan ("Plaintiff"), seeking a default judgment against Defendant, Tiger Brothers Food Mart, Inc. ("Defendant"). Plaintiff alleges that Defendant infringed his trademark rights in "BROTHERS FOOD MART," and seeks an injunction against the use of "BROTHER'S" and "BROTHERS FOOD MART." Plaintiff also requests a hearing to determine damages, including Defendant's profits, damages sustained by Plaintiff, and the costs of the action, including attorney fees. Defendant did not file an opposition to the motion and oral argument on this matter is not necessary. Jurisdiction is proper pursuant to 15 U.S.C. §1121, 28 U.S.C. §1338(b), 28 U.S.C. §1367, and 28 U.S.C. §1331. For the reasons below, Plaintiff's **Motion for Default Judgment (Doc. 12)** is GRANTED.

I.  Background

   A.  The Complaint

On June 24, 2015, Plaintiff filed this lawsuit against Defendant under The Lanham Act, 15 U.S.C. §1051 *et seq.*; the Louisiana Unfair Trade Practices Act, La. R.S. 51:1405 *et seq.*; and common law unfair competition. (Doc. 1 at pp. 1-2). Plaintiff

alleges that he is the owner of the trademark "BROTHERS FOOD MART" registered with the Louisiana Secretary of State as of June 14, 2012. (Doc. 1 at p. 2). Plaintiff also alleges he is the owner of the service mark "BROTHER'S" registered with the Louisiana Secretary of State as of June 19, 2015. Plaintiff claims continuous use of the mark "BROTHERS FOOD MART" since at least September 12, 1992 to identify and distinguish his convenience stores from similar businesses. (Doc. 1 at p. 2). Plaintiff alleges that he has used this mark on his stores, in advertising, and in promotional materials in Baton Rouge and New Orleans. (Doc. 1 at pp. 2-3). As a result of his advertisements, Plaintiff alleges that the public uses the mark to identify and refer to his convenience stores. (Doc. 1 at p. 3). He also claims the trademark refers to a high quality convenience store emanating from a single source and that his trademark has built up secondary meaning and goodwill in the marketplace. (Doc. 1 at p. 3).

Plaintiff alleges that Defendant has infringed his trademark right by using "TIGER BROTHERS FOOD MART" in connection with its convenience store, which is likely to cause confusion as to source designation. (Doc. 1 at pp. 3-4). Additionally, Plaintiff claims Defendant's actions constitute unfair competition and unfair or deceptive acts and practices in the conduct of business. (Doc. 1 at p. 5). Accordingly, Plaintiff seeks a permanent injunction restraining Defendant from using "TIGER BROTHERS FOOD MART" or "TIGER BROTHERS" in connection with convenience stores, as well as damages, attorneys' fees, and court costs. (Doc. 1 at pp. 6-7).

B.   **Procedural History**

Plaintiff initiated this action on June 24, 2015, and served Defendant on June 25, 2015. (Doc. 1; Doc. 5). Defendant's answer was due on July 20, 2015, or twenty-one days after receiving service. Fed. R. Civ. P. 12(a)(1)(A). A purported answer was filed on July 10, 2015, signed by Defendant's agent and officer, Eyad Khaled ("Khaled"). (Doc. 6). However, Mr. Khaled is not an attorney and it was improper for him to file an answer on behalf of Defendant, a corporate entity. (Doc. 8 at p. 1); *see Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984) (finding "the 'clear' rule is 'that a corporation as a fictional legal person can only be represented by licensed counsel'" (quoting *K.M.A., Inc. v. General Motors Acceptance Corp.*, 652 F.2d 398, 399 (5th Cir. 1982))). Due to the deficiency of the answer, the answer was stricken from the record by the Court on July 20, 2015. (Doc. 8 at p. 1). On July 22, 2015, Plaintiff moved for an entry of default, (Doc. 9 at p. 1), which the Clerk of Court entered on July 27, 2015, pursuant to Federal Rule of Civil Procedure ("Rule") 55(a), (Doc. 10 at p. 1).

On October 21, 2015, Plaintiff filed the subject Motion for Entry of Default Judgment, pursuant to Rule 55(b). (Doc. 12). On October 26, 2015, Defendant obtained counsel and filed an answer, without requesting leave of court, on October 27, 2015. (Doc. 13). On November 16, 2015, Plaintiff filed a Motion to Strike the Answer of Defendant. (Doc. 14 at p. 1). On January 11, 2016, the Court granted the

Motion to Strike the Answer and the answer was stricken from the record. (Doc. 26 at p. 4).[1]

## II. Standard of Review

The service of a summons triggers a duty to respond to a complaint and a failure to respond may result in the entry of default or default judgment under Federal Rule of Civil Procedure 55. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937–39 (5th Cir. 1999). When a party establishes by affidavit or some other method that there has been a default, the Clerk of Court will enter the default. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Once there has been an entry of default, the plaintiff may apply to the Court for a default judgment. *Id.*

Default judgments are usually disfavored under the Federal Rules of Civil Procedure. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A default judgment is considered to be a drastic remedy that should only be available "when the adversary process has been halted because of an essentially unresponsive party." *Id.* (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Because of this view, a party is not entitled to a default judgment, even where the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

In determining whether a default judgment should be entered, the Fifth Circuit has developed a two part test. *Taylor v. City of Baton Rouge*, 39 F. Supp. 3d

---

[1] The Court also denied several motions filed by the Defendant, including a Motion for Leave of Court to File Out of Time Answer and a Motion to Set Aside Default Judgment, which was denied. (Doc. 26 at p. 5).

807, 813 (M.D. La. 2014). The first part of the analysis is to determine whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Several factors are relevant to this inquiry, including: (1) whether there are material issues of fact at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by Defendant. *Id*. Second, the Court must assess the merits of Plaintiff's claims and find a viable claim for relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975).

### III. Analysis

The Court finds that default judgment is appropriate under the circumstances of this case and that Plaintiff states a viable claim for relief. Default Judgment is appropriate because Defendant failed to file a proper and timely answer, and has failed to produce evidence to show that its failure to file an answer resulted from "good faith mistake or excusable neglect." *See Lindsey*, 161 F. 3d at 893. Additionally, Defendant's failure to file an opposition to the motion or otherwise defend the instant suit for more than seven months mitigates the harshness of a default judgment. Lastly, the Court is not aware of any facts that would constitute "good cause" to set aside default judgment if Defendant filed a motion requesting such.

Furthermore, after reviewing the allegations set forth in the Complaint, the Court finds that Plaintiff states a viable claim under 15 U.S.C. §1125(a) for False

Designation of Origin; the Louisiana Unfair Practice Act, La. R.S. § 51:1405; and Common Law Unfair Competition.

### A. False Designation of Origin—15 U.S.C. §1125(a)

A claim for false designation of origin under the Lanham Act arises when any person uses a mark in connection with any goods or services, the use of which is likely to cause confusion, mistake, or affiliation. 15 U.S.C. §1125(a). In order to prevail in a claim for false designation of origin, the plaintiff must meet the threshold requirement of proving he or she possesses a protectable mark. *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). This threshold can be met by showing that the mark is registered, and thus protected from infringement by junior users. *Id.* Here, Plaintiff submitted registration certificates from the Louisiana Secretary of State for both trade name and service name marks. (Doc. 1-1; Doc. 1-2). These registrations meet the threshold requirement of ownership required in a false designation of origin claim.

Once the threshold requirement is met, a plaintiff can establish a false designation of origin claim by showing that a defendant's use of the trademark creates a likelihood of confusion in the minds of potential customers. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000). Courts consider a list of non-exhaustive, non-dispositive factors to determine whether or not a likelihood of confusion exists. *Lyons P'ship v. Giannoulas*, 179 F.3d 384, 388 (5th Cir. 1999). These factors include:

> (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the

> products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion.

*Id.* at 389 (citations omitted). These factors are considered in light of the circumstances of each case and accordingly some factors may weigh more heavily in the analysis than others. *Am. Century Proprietary Holdings v. Am. Century Cas. Co.*, 295 F. App'x 630, 635 (5th Cir. 2008) (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004); *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 218 (5th Cir. 1985)).

Here, the Court finds that Plaintiff's allegations demonstrate that Defendant's use of the mark "BROTHERS FOOD MART" creates a likelihood of confusion based on the type of trademark allegedly infringed; the similarity of the two marks and the products and services offered; and evidence of actual confusion.

The mark at issue possesses enough strength and distinctiveness to qualify as the type to mark that deserves protection. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir. 1980) (evaluating the strength and distinctiveness of the mark "Domino" as compared to such distinct marks as "Kodak" and "Xerox"). "To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning in the mind of the public." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). Plaintiff alleges that consumers use the trademark to identify and refer to "a high quality convenience store emanating from a single source" and that the mark has "built up extensive secondary meaning and good will."

(Doc. 1 at p. 3). The consumer recognition alleged by Plaintiff sufficiently establishes a distinctive mark and weighs in favor of actual confusion.

In addition to the distinctiveness of Plaintiff's mark, there are also similarities between the marks and the products and services offered. "TIGER BROTHERS FOOD MART" and "BROTHERS FOOD MART" are effectively identical marks, notwithstanding the Defendant's addition of the word "Tiger." *See Cottonwood Fin. Ltd. v. Cash Store Fin. Servs.*, 778 F. Supp. 2d 726, 751 (N.D. Tex. 2011) (finding "The Cash Store" and "Cash Store" effectively identical); *see also Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010) (concluding the marks "Visa" and "eVisa" were "effectively identical"). The similarity of the marks is further exasperated by the similarity of the products and services offered. Plaintiff alleges that both companies engage in the business of providing convenience store services in Baton Rouge, Louisiana, including the sale of alcoholic beverages. (Doc. 1 at pp. 2-3; Doc. 1-5). The similar products and services offered by the two companies appeal to the same consumer group, despite the relative sizes of the companies. *See Oleg Cassini, Inc. v. Cassini Tailors, Inc.*, 764 F. Supp. 1104, 111 (W.D. Tex. 1990) (finding that a strong similarity in the types of goods and services provided, even if the plaintiff and defendant are drastically different business sizes, can lead to a likelihood of consumer confusion). Each of these similarities alleged weigh in favor of a likelihood of confusion.

Finally, Plaintiff alleges actual confusion, which is the best indicator that a likelihood of confusion does in fact exist. *Amstar Corp.*, 615 F.2d at 263. In his

Complaint, Plaintiff alleges consumers are confused as to the ownership of "TIGER BROTHERS FOOD MART" in relation to his store, "BROTHERS FOOD MART." In support of this assertion, Plaintiff, in his declaration, claims that vendor representatives from Coca-Cola and Budweiser, as well as a representative from another convenience store chain, Circle K, believed that "TIGER BROTHERS FOOD MART" was actually owned and operated by Plaintiff as part of his chain of convenience stores. (Doc. 12-1 at p. 13). These instances of confusion, from actors who are familiar with the convenience store business, is evidence of actual confusion. Evidence of actual confusion, in addition to the distinctiveness of Plaintiff's mark and the similarities between the marks, strongly support a finding that Plaintiff alleges a viable false designation of origin claim. *See Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 597 (5th Cir. 1985) (finding evidence of actual confusion is the best evidence of a likelihood of confusion, whether those instances of actual confusion are on the part of consumers or professionals).

**B.  Louisiana Unfair Trade Practices Act—La. R.S. §51:1401 et seq.**

The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits any unfair methods of competition and any unfair or deceptive acts or practices in the conduct of any trade or commerce. La. R.S. §51:1405. Under Fifth Circuit law, a likelihood of confusion supports both a claim under the Lanham Act and under the LUPTA. *Louisiana World Exposition, Inc. v. Logue*, 746 F.2d 1033, 1039 (5th Cir. 1984) (finding likelihood of confusion is an essential element to claims under the Lanham Act and Louisiana statute, §51:1401 *et seq.*); *see also Bd. of Supervisors for Louisiana*

9

*State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008) (holding that the digits-of-confusion analysis for likelihood of confusion apply with equal force to LUTPA claim requirements). As the Court has found Plaintiff's allegations of a likelihood of confusion are supported by the factual allegations of the Complaint, these facts would also support a finding of a violation of the LUTPA.

### C. Common Law Unfair Competition

Under the common law, a likelihood of confusion or an attempt to pass off someone's goods or services as those of another constitute unfair competition. *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 671 (5th Cir. 1975); *see also Gulf Coast Bank v. Gulf Coast Bank & Trust Co.*, 652 So.2d 1306, 1308 (La. 1995) (holding that a party need not prove fraud to enjoin another from using its trade name, but must only show a likelihood of confusion). Plaintiff has alleged and demonstrated that there is a likelihood of confusion—and in fact actual confusion—between his business and that of Defendant. As Plaintiff has met this burden of showing a likelihood of confusion for a false designation of origin claim, Plaintiff has also met the burden required for a successful common law unfair competition claim. *See also Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) (finding the same facts that support a claim of trademark infringement also support a claim for unfair competition); *Pebble Beach Co. v. Tour 18 I*, 942 F. Supp. 1513, 1554 (S.D. Tex. 1996) (finding the same facts that support a claim of trademark infringement also support claims for common law unfair competition and so liability depends on a likelihood of confusion); *King-Size, Inc. v.*

*Frank's King Size Clothes, Inc.*, 547 F. Supp. 1138, 1163 (S.D. Tex. 1982) (finding that claims for trademark infringement and common law unfair competition require the same elements). Thus, Plaintiff alleges a viable common law unfair competition claim.

### D.   Remedies

Plaintiff is requesting a permanent injunction against "TIGER BROTHERS FOOD MART," as well as Defendant's profits, Plaintiff's damages, and attorney fees. The Lanham Act grants the Court discretion to enter an injunction to prevent continued infringement of a trademark. 15 U.S.C. §1116(a). In order for a permanent injunction to issue, a plaintiff must show "that a commercial advertisement or promotion is either literally false or that the advertisement is likely to mislead and confuse consumers" and that the plaintiff "will suffer irreparable harm if the injunction is not granted." *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 465 (5th Cir. 2001) (quoting *Seven-Up v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996)). Plaintiff's allegations have shown Defendant's use of "TIGER BROTHERS FOOD MART" is likely to confuse consumers as to the source of the goods and services provided. Plaintiff also alleges the continued use of "TIGER BROTHERS FOOD MART" will cause irreparable harm to his trademark, "BROTHERS FOOD MART," by damaging his consumer goodwill. (Doc. 1 at p. 7). As such, a permanent injunction is warranted.

Upon a successful claim under 15 U.S.C. §1125, a plaintiff shall be entitled to recover the defendant's profits, damages sustained by the plaintiff, and the costs of

the action. 15 U.S.C. §1125. The awarding of profits is not automatic and is within the discretion of the court. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002) (citing *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131 (1947); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998)). Relevant factors in this analysis include,

> (1) whether the defendant had the intent to confuse or deceive, (2) whether the sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Quick Techs., Inc.*, 313 F.3d at 349 (quoting *Pebble Beach*, 155 F.3d at 554). Similarly, the court is given broad discretion to determine "a just amount or recovery for trademark infringement." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997). Because Plaintiff has not alleged specific damages and Defendant's profits have not been calculated, a hearing is necessary to determine the appropriateness of awarding profits, and if appropriate, to calculate a just amount.

Furthermore, the Lanham Act provides for attorney fees, but only in "exceptional cases." 15 U.S.C. §1117. The Fifth Circuit has defined "exceptional cases" as those where the defendant infringes the plaintiff's mark in bad faith—where the infringement is malicious, fraudulent, deliberate, or willful. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 537 (5th Cir. 2012) (citations omitted); *Procter & Gamble, Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002); *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992); *K&G*

*Men's Co. v. Carter*, No. 10-309-JJB-SCR, 2010 U.S. Dist. LEXIS 95830 (M.D. La. 2010). Courts have found that a failure to cease and desist upon request of the plaintiff or the failure to respond to pleadings can constitute bad faith. *See Chevron Intellectual Prop., LLC v. Allen*, 2009 U.S. Dist. LEXIS 74751 (N.D. Tex. 2009); *K&G Men's Co.*, 2010 U.S. Dist. LEXIS 95830 at *1, *4.

Here, Defendant has exhibited several instances of bad faith. First, according to Plaintiff's attorney's declaration, he contacted Defendant's agent, Mr. Khaled, concerning the use of "TIGER BROTHERS FOOD MART" on March 19, 2015. Mr. Khaled indicated that he would change the business name after state licenses were received because to change the name at that time would delay the business opening by 45 days. (Doc. 12-10 at p. 1). After receiving the anticipated licenses, and beginning operations on June 2, 2015, Mr. Khaled refused to change the business name and indicated that he believed it to be a non-issue. (Doc. 12-10 at p. 2). Additionally, after being properly served with Plaintiff's Complaint on June 25, 2015, Defendant failed to timely file a response. Defendant also failed to file an opposition to the instant motion. Therefore, these instances of bad faith on the part of Defendant make this claim an "exceptional case" and entitle Plaintiff to attorney fees under 15 U.S.C. §1117.

## IV.  Conclusion

For the foregoing reasons, the Court concludes that Plaintiff is entitled to a default judgment against Defendant.

Accordingly,

**IT IS ORDERED** that Plaintiff Imad Faiez Hamdan's **Motion for Default Judgment (Doc. 12)** is GRANTED, and a **DEFAULT JUDGMENT** is **ENTERED** in favor of Plaintiff Imad Faiez Hamdan, and against Tiger Brothers Food Mart, Inc.

**IT IS FURTHER ORDERED** that Defendant, Tiger Brothers Food Mart, Inc., is **PERMANENTLY ENJOINED** from using "BROTHER'S" or "BROTHERS FOOD MART" in connection with its business.

**IT IS FURTHER ORDERED** that the issue of Defendant's profits and the damages sustained by Plaintiff is referred to the Magistrate Judge to conduct a hearing, pursuant to Federal Rule of Civil Procedure 56(b)(2), to determine the amount of monetary profits and damages due to Plaintiff, Imad Faiez Hamdan.

**IT IS FURTHER ORDERED** that Plaintiff Imad Faiez Hamdan is awarded attorney fees pursuant to 15 U.S.C. §1117. The matter of attorney fees is referred to the Magistrate Judge to determine the amount of the reasonable attorney fees to be awarded.

**IT IS FURTHER ORDERED** that final judgment shall issue by separate order.

Baton Rouge, Louisiana, this 21ST day of March, 2016.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**