# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **IMAD FAIEZ HAMDAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-412-BAJ-EWD** |
| **TIGER BROTHERS FOOD MART INC.** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 22, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

IMAD FAIEZ HAMDAN                              CIVIL ACTION

VERSUS                                         NO. 15-412-BAJ-EWD

TIGER BROTHERS FOOD MART INC.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a second Motion for Damages, filed by Imad Faiez Hamdan ("Plaintiff").[1]  The Motion is opposed.[2]  Oral argument is not necessary.  For the reasons that follow, the undersigned recommends[3] that the Motion be **GRANTED in part** and **DENIED in part.**  To the extent Plaintiff seeks reasonable attorney's fees in the amount of $48,684.00, the undersigned recommends that the Motion be **GRANTED in part** and that Plaintiff be awarded $8,538.80 in reasonable attorney's fees.  To the extent that Plaintiff seeks an award of $642,671.05 in Defendant's profits, the undersigned recommends that the Motion be **DENIED**.

## I.    Factual and Procedural Background

On June 24, 2015, Plaintiff filed a Complaint against Tiger Brothers Food Mart Inc. ("Defendant"), alleging trademark infringement in violation of Section 43(a) of The Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition and trademark infringement, and violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1405, *et seq.*[4]  After

---

[1] R. Doc. 51.

[2] R. Doc. 55.

[3] At least one court in this Circuit has held that a post-trial motion for attorney's fees is a dispositive matter on which a magistrate judge should enter a report subject to *de novo* review.  *Blair v. Sealift, Inc.*, 848 F. Supp. 670, 679 (E.D. La. 1994).

[4] R. Doc. 1.

Defendant failed to timely answer,[5] Plaintiff moved for an entry of default on July 22, 2015[6] and the Clerk entered default on July 27, 2015.[7]  On October 21, 2015, Plaintiff filed a Motion for Entry of Default Judgment on his claims for trademark infringement, common law unfair competition and for violation of the LUTPA.[8]  Plaintiff sought an injunction, an award of Defendant's profits and Plaintiff's damages, and attorney's fees and costs.[9]  On October 27, 2015, without requesting leave of court, Defendant filed an Answer.[10]  On November 16, 2015, Plaintiff filed a Motion to Strike the Answer,[11] which the Court granted.[12]

On March 22, 2016, the District Judge issued a Ruling and Order granting Plaintiff's Motion for Entry of Default Judgment and finding that Plaintiff was entitled to a permanent injunction and attorney's fees under The Lanham Act.[13]  With respect to Plaintiff's request for damages and Defendant's profits, the District Judge concluded that, "Because Plaintiff has not alleged specific damages and Defendant's profits have not been calculated, a hearing is necessary to determine the appropriateness of awarding profits, and if appropriate, to calculate a just amount."[14]  As a result, the matter was referred to the undersigned Magistrate Judge to conduct a hearing to determine the amount of monetary profits and damages, if any, due to Plaintiff and to determine the amount of the reasonable attorney's fees to be awarded.[15]

---

[5] A purported Answer was originally filed on July 10, 2015, signed by Defendant's agent and officer, Eyad Khaled. R. Doc. 6.  However, because Khaled is not an attorney, it was improper for him to file an answer on behalf of Defendant, a corporate entity.  R. Doc. 8.  Due to this deficiency, the Answer was stricken from the record on July 20, 2015.  *Id.*
[6] R. Doc. 9.
[7] R. Doc. 10.
[8] R. Doc. 12.
[9] R. Doc. 12-1 at pp. 13-14.
[10] R. Doc. 13.
[11] R. Doc. 14.
[12] R. Doc. 26.
[13] R. Doc. 27 at pp. 11-13.
[14] *Id.* at p. 12.
[15] *Id.* at p. 14.

A status conference was held on April 5, 2016 to discuss whether discovery was necessary with regard to the issues of Defendant's profits and Plaintiff's damages. The parties requested discovery on these issues and a deadline of July 5, 2016 was set to complete discovery.[16] That deadline was twice extended at the Plaintiff's request.[17]

After approximately seven months to conduct discovery, Plaintiff filed a Motion for Damages on December 5, 2016, seeking a final judgment awarding Plaintiff damages of $642,671.05 and attorney's fees of $71,226.[18] Defendant opposed the Motion for Damages, asserting that Plaintiff was not entitled to damages or attorney's fees.[19] On July 14, 2017, the undersigned issued a Ruling and Order awarding Plaintiff $33,916.00 in reasonable attorney's fees incurred to obtain the March 22, 2016 default judgment and denying without prejudice Plaintiff's request for damages.[20] The undersigned gave Plaintiff 45 days from the date of the Ruling and Order to re-file the motion with sufficient information for the Court to conduct the analysis set forth in *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526 (5th Cir. 1998) to determine the appropriateness of an award of profits and, if appropriate, the proper calculation of such award.[21]

After obtaining an extension of the 45-day deadline,[22] Plaintiff filed the instant Motion for Damages on September 28, 2017.[23] Plaintiff seeks a final judgment awarding him damages of $642,671.05 and attorney's fees of $48,684 for the work performed after March 22, 2016 (in addition to the $33,916 awarded on July 14, 2017), and requesting that the amount of attorney's fees be increased "after counsel for Plaintiff accounts for time for the remainder of this

---

[16] R. Doc. 29.
[17] R. Docs. 31 & 33.
[18] R. Doc. 34 at p. 1.
[19] R. Doc. 40.
[20] R. Doc. 48.
[21] *Id*. at p. 1.
[22] R. Doc. 50.
[23] R. Doc. 51.

litigation."[24]  As in the prior Motion for Damages, Plaintiff asserts that he is entitled to Defendant's profits from the period during which Defendant allegedly infringed Plaintiff's trademark, which was March 2015 through March 2016.[25]  Plaintiff asserts that an award of profits is appropriate in this case under the six factors set forth in *Pebble Beach Co.* and Plaintiff re-urges the arguments made in his prior Motion for Damages regarding the proper calculation of Defendant's profits.[26] Plaintiff further asserts that he is entitled to $48,684 in attorney's fees for the work performed by three attorneys between March 22, 2016 and September 27, 2017.[27]  Defendant opposes the Motion, asserting that Plaintiff is not entitled to damages or attorney's fees because Defendant's alleged infringement was not in bad faith, nor was it malicious, fraudulent, deliberate or willful.[28]

## II.    Law and Analysis

### A.    Recovery of Defendant's Profits and Plaintiff's Damages Under The Lanham Act, 15 U.S.C. § 1125

Upon a successful claim for false designation of origin under The Lanham Act, 15 U.S.C. § 1125(a), a plaintiff "shall be entitled" to recover: (1) defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action.  15 U.S.C. § 1117(a).  "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."  *Id*.  However, the award of profits under § 1117(a) is not automatic and is within the discretion of the court.[29]  In determining whether an award of profits is appropriate in a trademark infringement case, courts consider the following factors:

---

[24] R. Doc. 51 at p. 1.
[25] R. Doc. 51 at p. 10; *See*, R. Doc. 34-1 at p. 2.
[26] R. Doc. 51-1 at pp. 3-13; *See*, R. Doc. 34-1 at pp. 2-4.
[27] R. Doc. 51-1 at pp. 14-15.  Despite Plaintiff's assertion that he is only seeking reimbursement for the work performed by three attorneys (Seth Nehrbass, Mark N. Melasky and Melanie M. Mulcahy), the total amount sought in attorney's fees includes the fees of two additional individuals, Kaja S. Elmer and Eric J. Derbes.  R. Doc. 41-1 at p. 15.
[28] R. Doc. 55.
[29] *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002) (citing *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947); *Pebble Beach Co*., 155 F.3d at 554)).

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.[30]

According to the Fifth Circuit, "Great latitude is given the district court in awarding damages under The Lanham Act, 'which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement.'"[31]

## 1. Analysis of the *Pebble Beach Co.* Factors

In the instant case, the parties dispute both the appropriateness of an award of Defendant's profits and the proper calculation thereof. In addressing the *Pebble Beach Co.* factors, Plaintiff relies heavily upon the findings of the March 22, 2016 Ruling granting Plaintiff a default judgment. However, such reliance is misplaced, as those findings were made under difference circumstances in the context of an unopposed Motion for Default Judgment.

Plaintiff's Motion for Default Judgment sought a "judgment awarding (1) defendant's profits, (2) damages sustained by Plaintiff, (3) an injunction against use of the terms 'Brother's' or 'Brother's Food Mart' in connection with good [sic] or services for convenience stores, for convenience store services featuring groceries, prepared food and gasoline, and retail grocery stores and retain store services featuring convenience store items, prepared food, and gasoline, and (4) the costs of the action, including attorney fees, as provided by 15 U.S.C. § 1117."[32] The March 22, 2016 ruling did not award Defendant's profits or the damages sustained by Plaintiff, although that Ruling did grant the requested injunctive relief and awarded attorney's fees.[33] In addressing

---

[30] *Quick Techs., Inc.*, 313 F.3d at 349 (quoting *Pebble Beach Co.*, 155 F.3d at 554).
[31] *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997) (quoting *Holiday Inns, Inc. v. Alberding*, 683 F.2d 931, 935 (5th Cir. 1982)).
[32] R. Doc. 12-1 at p. 14.
[33] R. Doc. 27 at p. 14.

Plaintiff's request for profits, the March 22, 2016 Ruling referenced the applicability of the *Pebble Beach Co.* factors but went on to find that, "Because Plaintiff has not alleged specific damages and Defendant's profits have not been calculated, a hearing is necessary to determine the *appropriateness of awarding profits*, and if appropriate, to calculate a just amount."[34]  Thus, no determination was made regarding Plaintiff's entitlement to damages or profits.  Instead, the matter was referred to the undersigned for a hearing and determination both as to the appropriateness of an award of profits and, if appropriate, the amount to be awarded.

As a result of the March 22, 2016 Ruling, the parties requested an opportunity to conduct discovery with regard to the issue of Defendant's profits and the damages sustained by Plaintiff, and the parties were initially given approximately three months -- until July 5, 2016 -- to complete such discovery.[35]  On July 28, 2016, Plaintiff requested an extension of the July 5, 2016 discovery deadline to conduct additional discovery and to depose Defendant's corporate representative.[36] The undersigned granted Plaintiff's request on July 29, 2016, giving the parties until September 6, 2016 in which to complete discovery limited to the issue of Defendant's profits and the damages sustained by Plaintiff.[37]  Plaintiff then sought an additional extension of the deadline to complete discovery and for the parties to file their briefs on the issues, which was granted by the Court on September 12, 2016.[38]  At that point, the discovery deadline was extended to November 7, 2016.

Despite having seven months to conduct discovery regarding the issue of Plaintiff's damages and Defendant's profits, on July 14, 2017 the undersigned held that, "Because the parties have not provided any information to permit the undersigned to make a determination regarding

---

[34] R. Doc. 27 at p. 12 (Emphasis supplied).
[35] *See*, R. Doc. 29 at p. 1.
[36] R. Doc. 30.
[37] R. Doc. 31.
[38] R. Doc. 33.

the threshold issue of the appropriateness of awarding profits, the undersigned must defer ruling upon this issue until such information is provided."[39]  In the instant Motion, Plaintiff was given still another opportunity to provide specific information regarding the issue of Defendant's profits and the damages sustained by Plaintiff as a result of the alleged infringement, and Plaintiff has still failed to provide such information, choosing instead to rely primarily on the findings in the March 22, 2016 Ruling on a Motion for Default Judgment.

### a. Intent to Confuse or Deceive

With respect to the first *Pebble Beach Co.* factor, Plaintiff asserts that Defendant "presumably" had the intent to confuse or deceive based upon Defendant's refusal to change its name, as promised by Defendant's agent, Mr. Eyad Khaled, on March 19, 2015.[40]  Plaintiff also relies on the March 22, 2016 Default Judgment, in which the Defendant was found to have acted in bad faith by failing to change its name, failing to file a response to the Plaintiff's Complaint in this matter and by failing to file an opposition to the prior Motion for Default Judgment.[41]  Plaintiff further asserts that Defendant's intent to confuse or deceive is evident from the conclusion in the March 22, 2016 Ruling that Plaintiff had demonstrated not only a likelihood of confusion, but actual confusion between his business and that of the Defendant.[42]

First, it is important to note with regard to Plaintiff's reliance on the March 22, 2016 Ruling that, because the Ruling was made in the context of a Motion for Default Judgment, the Court did not consider, or have the benefit of, any evidence or argument responsive to Plaintiff's claims, which is no longer the case.  Additionally, as noted above, the March 22, 2016 Ruling does not contain findings as to whether Plaintiff had presented sufficient evidence to meet any of the *Pebble*

---

[39] R. Doc. 48 at p. 7.
[40] R. Doc. 51-1 at p. 4 (*citing* R. Doc. 27 at p. 13); *See*, R. Doc. 12-10 at p. 1.
[41] R. Doc. 51-1 at p. 4 (*citing* R. Doc. 27 at p.13).
[42] R. Doc. 51-1 at pp. 4-5 (*citing* R. Doc. 27 at pp. 10-11).

*Beach Co.* factors.  This is clear not only from the language of the March 22, 2016 Ruling, but also from the fact that the undersigned has previously stated the need for Plaintiff to put forth such evidence in finding Plaintiff's prior Motion for Damages insufficient.[43]  Indeed, if the Court had intended for Plaintiff to simply rely on that Ruling, the Court could have awarded damages as it did with regard to Plaintiff's request for injunctive relief and attorney's fees.  Also, seven months of discovery and two attempts to brief the issue of Defendant's profits and Plaintiff's damages would not have been necessary.

Turning to the evidence regarding Defendant's intent to confuse or deceive, at best there is competing evidence.  Plaintiff did not present any new evidence with regard to this issue, however, Plaintiff submitted affidavits in support of his Motion for Default Judgment.  With regard to confusion, Plaintiff's affidavit provided that "two vendors, Coca Cola and Budweiser, and representative of another chain of convenience stores, Circle K, told me they thought that Tiger Brothers Food Mart was one of my Brother's stores."[44]  Plaintiff's counsel's affidavit states that Defendant's agent, Mr. Khaled, told Plaintiff's counsel that he would not change the name of the store.[45]

Defendant asserts that it did not have any intent to confuse or deceive and disputes that it acted in bad faith or that the alleged infringement caused any confusion or deception.[46]  Defendant claims that there are many businesses in Louisiana with the word "Brothers" in the name, that Defendant thought "Tiger Brothers" was a good name for a business in Baton Rouge near Louisiana State University and that "Food Mart" is a common moniker used for convenience

---

[43] R. Doc. 48 at p. 7 ("While the parties in the instant case dispute the proper calculation of Defendant's profits, neither party has addressed *Pebble Beach Co*. or the six factors that the undersigned must consider in determining whether an award of Defendant's profits is even appropriate in this case.").
[44] R. Doc. 12-11 at ¶12.
[45] R. Doc. 12-10 at ¶ 5.
[46] R. Doc. 55 at p. 2.

stores.[47]  Defendant asserts that its business was never advertised as "Tiger Brothers Food Mart" and that once confronted by Plaintiff, Defendant dropped the "Food Mart" portion of its name and the sign for its business read only "Tiger Brothers."[48]  Defendant claims that it believed this cured any infringement and that it intended to change the name of the business registered with the Secretary of State to "Tiger Brothers Store" or something similar, but that Defendant waited for further clarification from this Court before doing so.  Defendant asserts that when the Motion for Default Judgment was granted on March 22, 2016, Defendant took steps to change its name to "Tiger Land Food Mart" and then to "Tiger Den Food Mart."[49]  Defendant further asserts that Plaintiff's mark, which is red with yellow and white lettering, is very distinct and that Plaintiff's stores contain matching red, yellow and white paint.[50]  Defendant claims that its store is "very stark in comparison" to Plaintiff's store, with a simple sign that in no way mimics Plaintiff's branding.  Finally, Defendant asserts that it has never insinuated to any vendor, competitor or customer that it was associated with Plaintiff or part of Plaintiff's brand.[51]

There are disputed issues of fact with regard to Defendant's intent to deceive or confuse.  Contrary to Plaintiff's assertions that Defendant's did not attempt to change the name, Defendant has presented evidence that the signage was in fact changed.[52]  Additionally, Plaintiff has presented photographs which show that Defendant's store does not have signage or utilize colors similar to Plaintiff's stores.[53]  Although there is competing evidence with regard to this factor, there is no

---

[47] R. Doc. 55 at p. 2.
[48] Id. (citing R. Doc. 1-3).
[49] R. Doc. 55 at p. 3.
[50] Id.
[51] Id.
[52] For example, Plaintiff presented photographs in support of his Motion for Default Judgment, including a sign for an alcoholic beverage permit that indicated the applicant was "Tiger Brothers Food Mart," R. Doc. 12-8, and a photograph of a sign showing "Tiger Brothers."  R. Doc. 12-7.  In contrast, Defendant presented evidence that the signage was, in fact, changed.  R. Doc. 55-3.
[53] Compare R. Doc. 55-2 with R. Docs. 55-3 and 55-4 at p. 1.

need to conduct an evidentiary hearing as the undersigned finds that Plaintiff does not meet enough of the other *Pebble Beach Co.* factors, nor has Plaintiff established Defendant's sales, sufficient to establish entitlement to damages whether or not intent to confuse or deceive is weighed in Plaintiff's favor.

### b. The Diversion of Sales

With respect to the second factor, Plaintiff contends that sales have been diverted because its vendors and competitors were confused by Defendant's mark.[54]  Plaintiff argues that if competitors and vendors were confused, it is likely that customers were also confused and that sales were diverted.  Plaintiff points out that the March 22, 2016 Ruling recognized that Plaintiff had shown a likelihood of confusion and actual confusion between Plaintiff's mark and Defendant's store.[55]  In response, Defendant asserts that "to assume that a customer would be confused because a vendor or competitor was confused is a big leap."[56]  Defendant contends that if any vendors or competitors were confused it was not due to Defendant's name, but because they know Plaintiff "was in the habit of purchasing Circle K stores as they closed down" and Defendant's building is an old Circle K store.[57]  Defendant further points out that the touchstone regarding confusion is based upon the average consumer, not vendors or competitors and that the average consumer would not confuse the two businesses merely because both names include the word "Brother's."[58]  Defendant points out that the two businesses are distinct, as Brother's Food Mart is a gas station that sells fried chicken and Defendant's business sells neither of those things.[59]

---

[54] R. Doc. 51-1 at p. 5.
[55] R. Doc. 51-1 at pp. 5-6 (*citing* R. Doc. 27 at pp. 7-9).
[56] R. Doc. 55 at p. 4.
[57] *Id.*
[58] *Id.* (citation omitted).
[59] *Id.* at p. 5.

Plaintiff has failed to present any additional evidence to establish diversion of sales. As noted above, the photographs submitted by Defendant do not suggest that there was as much similarity in the way the stores look as Plaintiff suggested in the Motion for Default Judgment. While Plaintiff submitted evidence in support of the Motion for Default Judgment, which stated that two vendors and a competitor were confused, Plaintiff has not presented evidence of customer confusion. To the extent Plaintiff asks the Court to presume sales were diverted because of confusion, some evidence of *customer* confusion is necessary. There seems to be less likelihood of customer confusion when the photographs of the respective stores and the actual items sold are compared than there would be when considering only the information presented by the Plaintiff on the Motion for Default Judgment.[60] Thus, the second factor weighs against an award of Defendant's profits.

### c. The Adequacy of Other Remedies

Plaintiff further asserts that awarding damages in this case will serve as a strong deterrent to discourage future behavior by Defendant and others similarly situated.[61] Plaintiff claims that Defendant's actions caused Plaintiff to incur significant attorney's fees to enforce his trademark rights and the goodwill associated therewith, which could have been avoided if Defendant's agent had kept his promise to change Defendant's name. Defendant, however, asserts that Plaintiff has not incurred any damages and that its actions have not caused Plaintiff to incur significant attorney's fees.[62] Defendant claims that it never advertised or held itself out to be a "Brother's Food Mart" and that any alleged infringement has been cured. Defendant further asserts that sales

---

[60] For example, it is true that "Tiger Brother's Food Mart" and "Brother's Food Mart" are very similar names and that both stores are convenience stores. However, because Defendant has introduced evidence that the name "Tiger Brother's Food Mart" was not used on the primary signage for Defendant's store and because Defendant has also presented information that, despite the fact these were both convenience stores, Plaintiff's stores sell fried chicken and gas, while Defendant's store does not, it seems less likely that sales were diverted because of customer confusion.
[61] R. Doc. 51-1 at p. 7.
[62] R. Doc. 55 at p. 5.

were not diverted to Defendant and that Plaintiff brought this action in anticipation of a windfall of profits from Defendant. Defendant claims that it has repeatedly informed Plaintiff that "there were no profits" and that Plaintiff has failed to specify any other damages for which he could recover.[63] Defendant contends that it and others similarly situated will be discouraged from any alleged future behavior by the attorney's fees already awarded to Plaintiff and incurred in the defense of this suit.

In light of Plaintiff's failure to show that any sales were lost or diverted as a result of Defendant's actions, the undersigned finds that the permanent injunction and attorney's fees are adequate remedies for the Defendant's alleged infringement. This Court has already determined that Plaintiff is entitled to a permanent injunction and attorney's fees under The Lanham Act, 15 U.S.C. § 1117, based upon the Defendant's alleged infringement of Plaintiff's trademark.[64] This Court has also already awarded Plaintiff $33,916.00 in reasonable attorney's fees incurred prior to March 22, 2016 to obtain a default judgment in this matter.[65] Because Plaintiff has failed to allege any facts or submit evidence in support of his claim that sales were lost or diverted as a result of the Defendant's actions, the Court finds that the permanent injunction and the award for the reasonable attorney's satisfy the equities in this case.[66] Thus, this factor weighs against an award of Defendant's profits.

### d. Any Unreasonable Delay by the Plaintiff in Asserting His Rights

With respect to the fourth factor in the analysis, Plaintiff asserts that he immediately asserted his rights to enforce his trademark and sought to amicably resolve the issue before

---

[63] *Id*. at p. 6.
[64] R. Doc. 27.
[65] R. Doc. 48 at pp. 18-19.
[66] *See, Seatrax, Inc. v. Sonbeck Intern., Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (citing *Pebble Beach Co.*, 155 F.3d at 555 ("Considering the lack of actual damages and the lack of an intent to confuse or deceive, injunctive relief satisfies the equities in this case.") (citations omitted)).

Defendant opened its store.[67]  Plaintiff claims that he promptly filed this suit after learning that Defendant's store had opened, that the name had not been changed and that Defendant had refused to change the name.  Because he immediately sought to enforce his trademark, Plaintiff contends there was no delay in asserting his rights.  Defendant asserts that while Plaintiff alleges that he sought to amicably resolve this matter in March 2015, Defendant thought that dropping "Food Mart" from its name cured the alleged infringement.[68]  Defendant claims that Plaintiff delayed in asserting his rights because Plaintiff did not file suit until approximately three months after Plaintiff sought to amicably resolve the matter.[69]

The undersigned finds that there was no unreasonable delay in Plaintiff's assertion of his rights in the underlying trademark.   The parties agree that Plaintiff's counsel contacted Defendant's agent, Mr. Khaled, in March 2015 seeking an amicable resolution of Defendant's alleged infringement and that Mr. Khaled agreed to change the name of Defendant's store after obtaining certain licenses.[70]  A delay of three months between Plaintiff's attempt to amicably resolve the dispute and filing the Complaint[71] in this matter is not unreasonable, especially in light of the fact that Defendant began operating its store only three weeks before Plaintiff filed the Complaint.[72]  As such, this factor weighs in favor of awarding Defendant's profits.

### e.  Public Interest in Making the Misconduct Unprofitable

Plaintiff asserts that the public has a strong interest in making Defendant's behavior unprofitable because if Defendant is not punished through the award of damages, consumers will continue to be duped by infringers and trademark holders will have no effective means of redress.[73]

---

[67] R. Doc. 51-1 at pp. 7-8.
[68] R. Doc. 55 at p. 6.
[69] *Id.*
[70] R. Doc. 51-1 at pp. 4, 7, 8; R. Doc. 55 at pp. 2; *See also*, R. Doc. 12-10 at p. 1.
[71] R. Doc. 1.
[72] *See,* R. Doc. 27 at p. 13 (*citing* R. Doc. 12-10 at p. 2).
[73] R. Doc. 51-1 at pp. 8-9.

13

Plaintiff claims that he was forced to spend tens of thousands of dollars to protect and defend his trademark from the Defendant's actions and that Plaintiff should be awarded all of his attorney's fees to serve as a deterrent to Defendant and against future infringement.[74]  Plaintiff contends that protection of the public interest is implicit in this Court's March 22, 2016 Ruling, finding that Defendant's use of Plaintiff's mark was likely to confuse consumers as to the source of the goods and services provided.[75]

Defendant asserts that because he disputes the alleged misconduct and because Plaintiff is merely attempting to collect a windfall of profits that do not exist, it would not be in the public interest to further punish Defendant by awarding Plaintiff damages.[76]  Defendant contends that this is not a case of a business owner attempting to take advantage of the good will of a competitor and that, "Defendant attempted to cure any alleged infringement and did not realize that by this time, no amount of good will would satisfy the Plaintiff."[77]  Defendant asserts that it also made a mistake by allowing Mr. Khaled to represent the business in litigation, which mistake "is now being characterized as bad faith and apathy."[78]  Defendant points out that while Plaintiff alleges he was dissatisfied with the discovery responses, the record does not reflect any motions to compel or subpoenas.  Defendant further asserts that its business was "already going under due to the lack of profits" and that the cost of this litigation and the attorney's fees assessed against it will "pretty much bury it."[79]  Defendant argues that it is not in the public interest to have a small business shut down by a franchise that can afford to litigate small business competitors into liquidation "based on minor misunderstandings and infractions."[80]

---

[74] *Id.* at p. 8.
[75] *Id.* (*citing* R. Doc. 27 at p. 11).
[76] R. Doc. 55 at p. 6.
[77] *Id.*
[78] *Id.* at pp. 6-7; *See*, R. Doc. 26 at pp. 3-4.
[79] R. Doc. 55 at p. 7.
[80] *Id.*

While it is in the public interest to make Defendant's misconduct unprofitable, this Court has already done that by awarding Plaintiff reasonable attorney's fees incurred in obtaining the default judgment.[81]  Plaintiff has not shown that it is in the public interest to further punish Defendant by awarding Plaintiff the Defendant's profits, especially where Plaintiff has failed to present any facts or evidence to show that he incurred damages beyond attorney's fees as a result of the underlying infringement.  As previously discussed, Plaintiff has not alleged facts or submitted evidence to show that sales were actually diverted from his business as a result of the alleged similarities between his business and that of the Defendant.  As such, this factor also weighs against an award of Defendant's profits.

### f.  Whether This is a Case of Palming Off

Turning to the sixth factor of the *Pebble Beach Co.* analysis, Plaintiff asserts that palming off has already been established in this case because of the finding in the March 22, 2016 Ruling that Plaintiff had demonstrated a likelihood of confusion and actual confusion between his business and that of the Defendant.[82]  Plaintiff notes that in the March 22, 2016 Ruling, the Court explained that, "Under the common law, a likelihood of confusion or an attempt to pass off someone's goods or services as those of another constitute unfair competition."[83]  Defendant contends that this is not a case of palming off because this is not a case where there is a likelihood of confusion.[84] Defendant maintains that there are numerous differences between its business and that of the Plaintiff and that Defendant never intended or attempted to "palm off" its store, goods or services as those of the Plaintiff.  Defendant further asserts that Plaintiff has failed to demonstrate any reasonable likelihood of confusion between the two businesses.

---

[81] R. Doc. 27; R. Doc. 48.
[82] R. Doc. 51-1 at p. 9 (*citing* R. Doc. 27 at pp. 10-11).
[83] R. Doc. 51-1 at p. 9 (*quoting* R. Doc. 27 at pp. 10-11) (internal citations omitted).
[84] R. Doc. 55 at p. 7.

As previously discussed, the evidence now before the Court suggests less likelihood of customer confusion as there are significant differences in the signage, branding and products of the stores. Because there is no evidence of palming-off in this case, this factor weighs against an award of Defendant's profits.

After analyzing the six factors set forth in *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998), the undersigned finds that an award of the Defendant's profits is not appropriate in this case. The Fifth Circuit has recognized that the diversion of sales and palming off are significant factors in the *Pebble Beach Co.* analysis.[85] As explained above, Plaintiff has not presented sufficient information to establish diversion of sales or palming off. Additionally, the permanent injunction and an award of reasonable attorney's fees are adequate remedies to both deter future infringement and satisfy the public interest in making Defendant's conduct unprofitable. Because an award of the Defendant's profits is not automatic and is committed to the discretion of this Court, and in light of the fact that Plaintiff has failed to meet his burden under the *Pebble Beach Co.* factors despite ample opportunity to do so, Plaintiff is not entitled to an award of Defendant's profits in this case. *See*, *Pebble Beach Co.*, 155 F.3d at 554 ("An award of the defendant's profits is not automatic and is committed to the discretion of the district court . . . .") (internal citations omitted).

## 2. The Calculation of Damages

Because the Court finds that an award of Defendant's profits is not appropriate in this case under the analysis set forth in *Pebble Beach Co.*, the Court need not make a determination regarding the proper calculation of the Defendant's profits that are attributable to the unlawful use of Plaintiff's mark. However, even if Plaintiff had shown that an award of Defendant's profits is

---

[85] *Pebble Beach Co.*, 155 F.3d at 555 (citing *Texas Pig Stands, Inc. v. Hard Rock Café Intern., Inc.*, 951 F.2d 684, 695 (5th Cir. 1992)).

proper under the *Pebble Beach Co.* factors, Plaintiff has not submitted sufficient evidence to establish the amount of Defendant's profits that allegedly resulted from the infringement of Plaintiff's trademark.  Plaintiff acknowledges that in a Lanham Act suit, the plaintiff has the burden of proving the defendant's sales and that the defendant has the burden of showing any costs or deductions claimed.[86]  However, as with Plaintiff's prior Motion for Damages, Plaintiff readily admits in the instant Motion that with respect to the Defendant's profits, "Plaintiff is unable to determine the actual amount of sales."[87]  Despite this admission, Plaintiff submitted bank statements from Defendant's Chase bank account showing that a total of $642,671.05 was deposited into the account between March 12, 2015 through February 29, 2016.[88]  Plaintiff then "respectfully requests that the Court deem all deposits into the Chase account to be sales of Defendant."[89]  Plaintiff asserts that, "It is unclear how additions to the account could have been unrelated to revenue of the store; therefore, the Plaintiff asserts that he should be awarded $642,671.05, the total of all deposits into the Chase account, as the profit from sales of Defendant."[90]

As explained by another court in this Circuit, "the Act explicitly states that a court is to exercise its discretion and award damages subject to the principles of equity.  Equity requires that any profits awarded to plaintiff be based, to the extent possible, on a realistic approximation of profits attributable to the infringement."[91]  "A determination of damages under the Lanham Act must be supported by evidence of actual damage suffered by the plaintiff."[92]  Here, Plaintiff has

---

[86] R. Doc. 51-1 at p. 13 (*citing* 15 U.S.C. § 1117(a)).
[87] R. Doc. 51-1 at p. 12; *See*, R. Doc. 34-1 at p. 4.
[88] R. Doc. 51-1 at pp. 10-11.
[89] *Id.* at p. 12.
[90] *Id*.
[91] *Rodeway Inns Intern., Inc. v. Amar Enterprises, Inc.*, 742 F. Supp. 365, 369 (S.D. Miss. 1990) (citing *Marshak v. Green*, 505 F. Supp. 1054, 1062 (S.D.N.Y. 1981)).
[92] *Rodeway*, 742 F. Supp. at 369 (citing cases).

not provided any information to support his claim that all of the money deposited into Defendant's Chase bank account represents the Defendant's profits from March 2015 through February 2016, the time of the alleged infringement. As previously discussed, Plaintiff has provided no information regarding Defendant's actual sales during that time. Although Plaintiff submitted bank statements, Plaintiff has provided no information regarding the source of the money deposited into the Chase account. Thus, it is unclear whether all of the money deposited into the Chase bank account even pertains to Defendant's business.[93]

While Plaintiff blames Defendant's "dilatory tactics, apathy and a failure to comply with requests of the Court or Plaintiff," for Plaintiff's failure to establish the sales in this case,[94] a review of the docket shows that the deadline to conduct discovery was extended each time Plaintiff requested an extension to afford the parties an opportunity to conduct whatever discovery they deemed necessary. If Plaintiff did not obtain sufficient information regarding Defendant's profits during discovery, or if Plaintiff did not like the answers obtained during discovery, there was a mechanism by which Plaintiff could have asked the Court to require Defendant to provide that information. Because Plaintiff has submitted insufficient evidence to determine the proper calculation of Defendant's profits during the time of the alleged infringement, Plaintiff's request for an award of $642,671.05 as the amount of Defendant's profits should be denied notwithstanding analysis of the *Pebble Beach Co.* factors.[95]

---

[93] This lack of information is especially troubling in light of the fact that the basis for Plaintiff's July 28, 2016 request to extend the discovery deadline was, in part, to depose Defendant's corporate representative. R. Doc. 30 at p. 2. Plaintiff did not submit any additional evidence in support of the instant Motion for Damages, including deposition testimony.

[94] R. Doc. 51-1 at p. 13.

[95] In addition to Defendant's profits, a successful claim under 15 U.S.C. §1125 would also permit Plaintiff to recover any damages sustained. As noted above, Plaintiff did not present any information regarding damages he allegedly sustained as a result of Defendant's conduct, other than attorney's fees. A reasonable amount of attorney's fees was already awarded by the District Judge, R. Doc. 27 at p. 14, in an amount that was fixed by the undersigned through the granting of the Motion for Default Judgment on March 22, 2016. R. Doc. 48 at p. 18. An additional award of attorney's fee incurred after the Motion for Default Judgment was granted is also recommended herein.

### B.  Recovery of Attorney's Fees Under The Lanham Act, 15 U.S.C. § 1117

#### 1.  Plaintiff is Entitled to a Partial Award of the Reasonable Attorney's Fees Incurred Between March 22, 2016 and December 5, 2016 in Connection With the Prior Motion for Damages

In addition to the request for damages and Defendant's profits, Plaintiff seeks an award for the attorney's fees he has incurred since obtaining the default judgment on March 22, 2016.[96]  In support of his request for attorney's fees, Plaintiff merely cites the portion of the March 22, 2016 Ruling and Order the Court held that, "These instances of bad faith on the part of Defendant make this claim an 'exceptional case' and entitle Plaintiff to attorney fees under 16 U.S.C. § 1117."[97]  Plaintiff requests an award of $48,684 in reasonable attorney's fees for 159.2 hours of work performed by five attorneys between March 22, 2016 and September 27, 2017—Seth M. Nehrbass and Mark N. Melasky of the firm Garvey, Smith & Nehbass ("GSN"), and Melanie M. Mulcahy, Kaja S. Elmer and Eric J. Derbes of The Derbes Law Firm, LLC ("The Derbes Law Firm").[98]  Defendant disputes that this is an "exceptional case" that warrants an award of attorney's fees under The Lanham Act.[99]  Defendant also disputes that Plaintiff's attorney's fees are reasonable, asserting that Plaintiff's counsel has failed to exercise appropriate billing judgment throughout this litigation.[100]  As such, Defendant argues that Plaintiff is not entitled to attorney's fees or, alternatively, that Plaintiff's attorney's fees should be reduced due to Plaintiff's failure to exercise billing judgment.

---

[96] R. Doc. 51 at p. 1.
[97] R. Doc. 51-1 at p. 13 (*citing* R. Doc. 27 at p. 13).
[98] R. Doc. 51-1 at pp. 14-15.  Plaintiff provides no information about Kaja S. Elmer or Eric J. Derbes beyond one billing record showing their billing rates and the time billed to this case and their inclusion in a table showing the total number of hours billed by Plaintiff's attorneys between March 22, 2016 and September 27, 2017.  *Id*. at p. 15; *See*, R. Doc. 51-12 at p. 2.
[99] R. Doc. 55 at p. 8.
[100] *Id*.; *See*, R. Docs. 51-6 and 51-12.

As previously mentioned, the Court has already concluded that Plaintiff is entitled to attorney's fees under 15 U.S.C. § 1117, but referred the matter to the undersigned to determine the amount of reasonable attorney's fees to be awarded.[101]  On July 14, 2017, the undersigned awarded Plaintiff $33,916 for the reasonable attorney's fees incurred prior to March 22, 2016 to obtain the default judgment.[102]  Thus, the sole issue before the Court is whether Plaintiff is entitled to recover additional attorney's fees incurred after obtaining the default judgment.

The billing records submitted with the instant Motion for Damages show that a majority of the time entries between March 22, 2016 and September 27, 2017 are for research and discovery conducted in an attempt to determine the proper calculation of Defendant's profits, preparing for the settlement conference held on May 31, 2017, and drafting the two Motions for Damages.[103]  In light of the Court's determination that Plaintiff is not entitled to an award of Defendant's profits, Plaintiff is not entitled to an award of the reasonable attorney's fees incurred in connection with Plaintiff's claim for damages under 15 U.S.C. § 1125.  However, because Plaintiff's prior Motion for Damages was partially successful, in that this Court awarded Plaintiff the reasonable attorney's fees incurred to obtain the default judgment, the undersigned finds that Plaintiff is entitled to a partial award of the reasonable attorney's fees incurred between March 22, 2016 and December 5, 2016 in connection with Plaintiff's prior Motion for Damages.[104]

## 2.  The Lodestar Amount

The Fifth Circuit uses the "lodestar" method to calculate reasonable attorney's fees.[105] Under the lodestar method, a court first determines the amount of reasonable attorney's fees by

---

[101] R. Doc. 27 at pp. 13-14.

[102] R. Doc. 48 at p. 18.

[103] *See*, R. Docs. 51-6 and 51-12.

[104] R. Doc. 34.

[105] *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing *Fender v. Zapata Partnership, Ltd.*, 12 F.3d 480, 487 (5th Cir. 1994)).

multiplying the number of hours reasonably expended on the litigation by the prevailing hourly rate in the community for similar work.[106]  The burden of demonstrating the reasonableness of the number of hours expended and the hourly rates charged falls on the fee applicant.[107]

Once this calculation is made, the court may decrease or enhance the lodestar amount based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).[108]  These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[109] However, "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate . . . and should not be double-counted."[110]

Here, the billing statements submitted by Plaintiff show that he incurred approximately $31,325 in attorney's fees between March 22, 2016 and December 5, 2016 for the work performed by five attorneys—Seth Nehrbass and Mark Melasky of GSN, and Melanie Mulcahy, Eric J. Derbes and Kaja S. Elmer of The Derbes Law Firm.[111]  Plaintiff submitted the billing statements and time records from GSN for the time period of March 22, 2016 through September 27, 2017, which show that Plaintiff incurred $28,972 in attorney's fees between March 22, 2016 and

---

[106] *Heidtman*, 171 F.3d at 1043 (citing *Fender*, 12 F.3d at 487).

[107] *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

[108] *Heidtman*, 171 F.3d at 1043.

[109] *Johnson*, 488 F.2d at 717-19.

[110] *Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citation omitted).

[111] *See*, R. Doc. 51-6 at pp. 1-18; R. Doc. 51-12 at pp. 2-15.

December 5, 2016 in connection with his prior Motion for Damages.[112]  Plaintiff similarly submitted billing statements and time records from The Derbes Law Firm for the time period from March 22, 2016 through August 28, 2017, which show that Plaintiff incurred $2,353 in attorney's fees between March 22, 2016 and December 5, 2016.[113]

With the exception of Derbes and Elmer, Plaintiff has provided evidence concerning the skill, qualifications and experience of his attorneys by providing a copy of their resumes.[114]  The evidence shows that Nehrbass, a partner with approximately 30 years of intellectual properly (IP) experience, billed at an hourly rate of $420 in 2016;[115] Melasky, an associate with over four years of IP experience, billed at an hourly rate of $220 in 2016;[116] and Mulcahy, a member of The Derbes Law Firm with approximately 18 years of IP experience, billed at hourly rates of $165 and $275 in 2016.[117]  The billing records also show that Eric J. Derbes billed at an hourly rate of $325 in March 2016 and that Kaja S. Elmer billed at a rate of $165 in March 2016.[118]

### a. Reasonable Hourly Rates

Plaintiff has the burden of showing that his attorneys' hourly rates are reasonable.[119]  With respect to the reasonable hourly rate, "the 'relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits.'"[120] "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."[121]  Additionally, "Hourly rates are to be computed according

---

[112] R. Doc. 51-6 at pp. 1-18.
[113] R. Doc. 51-12 at pp. 2-15.
[114] *See*, R. Docs. 51-11 & 51-13.
[115] R. Doc. 51-11 at p. 1; *See*, R. Doc. 51-7 at ¶ 3.
[116] R. Doc. 51-11 at p. 7; *See*, R. Doc. 51-7 at ¶ 4.
[117] R. Doc. 51-13; *See*, R. Doc. 51-12.
[118] R. Doc. 51-12 at p. 2.
[119] *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).
[120] *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998)).
[121] *Tollett*, 285 F.3d at 368 (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) (party seeking fees submitted "affidavits from other attorneys in the community showing the prevailing market rates in the community")).

to the prevailing market rates in the relevant legal market, not the rates that 'lions at the bar may command.'"[122]

While Plaintiff has provided information regarding the qualifications, skill and experience of three of his attorneys,[123] he has provided no information regarding the prevailing market rate for lawyers of similar skill, experience and reputation in the Middle District of Louisiana. Instead, Plaintiff argues that his attorney's fees are reasonable because they fall within the average hourly billing rates of partners and associates at three private law firms in New Orleans in 2010 (Adams and Reese; Jones, Walker, Waechter, Poitevent, Carrere & Denegre L.L.P.; and Phelps Dunbar LLP), as shown in a 2010 NLJ Billing Survey.[124] Relying upon the Declaration of his lead counsel, Seth Nehrbass, Plaintiff asserts that the average rate for "Partner Billing Rate High" for the three New Orleans law firms is $518.33, which is "well above the rate" charged by Plaintiff's attorneys, noting that Melasky's billing rate "is significantly lower than Nehrbass' rate."[125] Plaintiff points out that, "While these are not rates for patent and trademark attorneys, rates for patent and trademark attorneys are typically higher than for other types of law due to the specialization required."[126] As such, Plaintiff asserts that he should be able to recover the full rate charged by Nehrbass and Melasky in the attached billing statements. Plaintiff does not address the reasonableness of the rates charged by Mulcahy, Elmer or Derbes. As previously mentioned, Defendant disputes that Plaintiff's counsel's fees are reasonable.[127]

---

[122] *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000) (quotation omitted).
[123] R. Docs. 51-11 & 51-13.
[124] R. Doc. 51-10.
[125] R. Doc. 51-1 at p. 14 (*citing* R. Doc. 51-7).
[126] *Id.*
[127] R. Doc. 55 at p. 8.

The Fifth Circuit has held that, "[T]rial courts are considered experts as to the reasonableness of attorney's fees."[128]  Although the absence of affidavits from attorneys in the Middle District of Louisiana limits the Court's ability to determine the reasonableness of the rates in this matter, "the Court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services."[129]  While the 2010 NLJ Billing Survey provides the average hourly billing rates for partners and associates at three New Orleans law firms in 2010, it contains no information regarding the average hourly billing rates for attorneys in Baton Rouge in 2016.  Further, the rates in the 2010 NLJ Billing Survey are higher than the billing rates found reasonable by the Eastern District of Louisiana at that time for New Orleans attorneys with IP experience.[130]  Moreover, the rates requested by Plaintiff are higher than the hourly rates previously found reasonable by this Court in the July 14, 2017 Ruling on Plaintiff's prior Motion for Damages.[131]  In the prior Ruling, the undersigned found that the following hourly rates were reasonable in this case based upon the experience of Plaintiff's attorneys: $375 for Nehrbass (30 years of IP experience); $175 for Melasky (four years of IP experience); and $165 and $275 for Mulcahy (18 years of IP experience).[132]  Because Plaintiff had

---

[128] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *See, Davis v. Bd. of Sch. Comm'rs of Mobile County,* 526 F.2d 865, 868 (5th Cir. 1976) ("This court has recently reaffirmed the principle that the district court is itself an expert in assessing [the hourly rate].") (citations omitted).

[129] *MetroPCS v. Mohammed*, Civ. A. No. 3:16-CV-1946-L-BK, 2017 WL 2590108, at *9 (N.D. Tex. Apr. 24, 2017) (quoting *Areizaga v. ADW Corp.*, Civ. A. No. 3:14-cv-2899-B, 2016 WL 3406071, at *5 (N.D. Tex. June 21, 2016)).

[130] *See, Bd. Of Supervisors of Louisiana State Univ. v. Smack Apparel Co.*, Civ. A. No. 04-1593, 2009 WL 927996, at *3-4 (E.D. La. Apr. 2, 2009) (finding that the following hourly rates "are at the top of the range of prevailing market rates for lawyers with comparable experience and expertise" in IP litigation in New Orleans: $325 for a partner with 10 years of IP experience and for an attorney with 29 years of experience but not in the particular field of IP law, $225 for an attorney with eight years of IP experience, $150 for an attorney with two years of IP experience and $140 for an attorney with one year of litigation experience and one year of federal appellate court law clerk experience); *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 519-20 (E.D. La. 2012) (finding the following requested hourly rates were reasonable for attorneys in the New Orleans area: $250 for an attorney with 16 years of experience, $200 for an attorney with nine years of experience, and $175 for an attorney with four years of experience)).  Although the court in *Who Dat Yat Chat, LLC* did not specify whether the attorneys' experience was in IP law, the case involved a claim for trademark infringement.  838 F. Supp. 2d at 519-20.

[131] R. Doc. 48 at pp. 12-13.

[132] *Id.*

not provided any information regarding the prevailing market rates for attorney's in the Middle District of Louisiana with similar IP experience, the undersigned relied upon case law from this Circuit addressing the reasonable rates for attorneys in Baton Rouge and New Orleans with IP experience.[133]

Despite a second opportunity to provide this Court with information regarding the prevailing market rates for attorneys in the Middle District of Louisiana with similar years of IP experience, Plaintiff has again failed to provide the Court with such information. Thus, for the same reasons set forth in the July 14, 2017 Ruling on Plaintiff's prior Motion for Damages,[134] the undersigned again finds that the following hourly rates are reasonable in this case based upon the experience of Plaintiff's attorneys: $375 for Nehrbass; $175 for Melasky; and $165 and $275 for Mulcahy. As previously mentioned, Plaintiff has not provided any information about Kaja S. Elmer or Eric J. Derbes, who are mentioned in one billing record from The Derbes Law Firm[135] and in a chart containing Plaintiff's calculation of the reasonable attorney's fees,[136] other than their billing rates and the number of hours they worked on this case. According to Invoice No. 129073, Elmer billed at an hourly rate of $165 for 1.8 hours and Derbes billed at an hourly rate of $325 for 0.2 hours.[137] However, because Plaintiff has provided no information about Elmer or Derbes, the Court is unable to determine whether the rates charged are reasonable. As such, an award of fees for the work performed by Elmer or Derbes is not appropriate.[138]

---

[133] *Id*. (citing *K&G Men's Co., Inc. v. Carter*, Civ. A. No. 10-309, 2010 WL 3718837, at *2 (M.D. La. Sept. 13, 2010) (finding that with respect to the prevailing rates in the Baton Rouge community, "$300 represents a reasonable hourly rate even for an attorney with moderate training and experience in intellectual property law" and "falls well within the range of rates awarded in similar cases); *Bd. Of Supervisors of Louisiana State Univ.*, *supra*, 2009 WL 927996, at *3-4; *Who Dat Yat Chat, LLC*, *supra*, 838 F. Supp. 2d at 519-20.

[134] *See*, R. Doc. 48 at pp. 10-13.

[135] R. Doc 51-12 at p. 2.

[136] R. Doc. 51-1 at p. 15.

[137] R. Doc. 51-12 at p. 2.

[138] *See*, *Houston v. State Farm Fire and Cas. Ins. Co.*, Civ. A. No. 09-0420, 2010 WL 890248, at *2 (E.D. La. Mar. 5, 2010) (court concluded that it was unable to award fees for a law clerk's work on the case where the defendant

### b. Reasonable Number of Hours Expended

To determine the reasonable number of hours expended in a case, the party seeking attorney's fees must present adequately documented time records to the court.[139] "In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours."[140]  "As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded."[141]  In addition, "The plaintiffs are charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment."[142]  Billing judgment "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours.  Plaintiffs submitting fee requests are required to exercise billing judgment."[143]  "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment."[144]

Although not specified in the Motion for Damages, Plaintiff seeks attorney's fees for 29.8 hours billed by Nehrbass and 74.4 hours billed by Mulasky between March 22, 2016 and December

---

failed to provide any information regarding the law clerk other than his or her billing rate and the number of hours worked on the file).

[139] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

[140] *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990) (citing cases).

[141] *Bd. Of Supervisors of Louisiana State Univ.*, 2009 WL 927996, at *5 (citing *Watkins*, 7 F.3d at 457).

[142] *Walker v. U.S. Dept. of Housing and Urban Development*, 99 F.3d 761, 769 (5th Cir. 1996) (citation omitted).

[143] *Id*. (citation omitted).

[144] *Saizan v. Delta Concrete Products Co., Inc*., 448 F.3d 795, 799 (5th Cir. 2006) (affirming a 10% reduction in the lodestar amount for plaintiff's failure to provide evidence of billing judgment); *See, Walker*, 99 F.3d at 799 (imposing a 15% reduction of the requested fees for failure to exercise billing judgment); *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987) (imposing a 13% reduction to the lodestar amount for failure to exercise billing judgment); *Mauricio v. Phillip Galyen, P.C.*, 174 F. Supp. 3d 944, 950 (N.D. Tex. 2016) (finding that a voluntary reduction of attorney's fees by 20% "is consistent with amounts reduced by courts when applicants have failed to provide evidence of their billing judgment."); *US Green Building Council, Inc. v. Wardell*, Civ. A. No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *9 (N.D. Tex. June 17, 2016) (reducing the lodestar amount by 15% for failure to exercise billing judgment).

5, 2016.[145]  As with the prior Motion for Damages, the billing statements from GSN do not reflect the exercise of billing judgment.  Instead, the records show duplicative billing and an excessive amount of time billed by Melasky and Nehrbass for discussing discovery in this case.  Indeed, virtually every invoice shows an overlap in billing entries where Melasky and Nehrbass billed for time spent discussing discovery in this case.[146]  For instance, Invoice Nos. 65902, 67100 and 67891 show that Nehrbass and Melasky had several discussions regarding "discovery related to damages" and "discovery strategy" prior to Melasky drafting interrogatories and requests for production of documents on May 6, 2016,[147] and that Plaintiff was billed a total of eight times for those discussions.[148]  Likewise, Invoice No. 67891 shows that Melasky and Nehrbass each billed Plaintiff for a conversation regarding service of discovery and that Plaintiff was billed for research regarding "service requirements to propound discovery."[149]  Invoice No. 69688 further shows that Melasky billed Plaintiff four times for conversations with Nehrbass regarding "discovery status" and "discovery delinquency" in July 2016.[150]  In addition, Invoice Nos. 67100, 68643 and 69688 show time billed by Melaskey for discussions with Nehrbass regarding filing a motion for contempt and a motion to compel, as well as time billed for drafting a motion to compel,[151] but the record is devoid of a motion for contempt or a motion to compel filed by Plaintiff.  As such, the number of hours requested for Nehrbass and Melasky should be reduced by at least 20% for Plaintiff's continued failure to exercise billing judgment.[152]

---

[145] R. Doc. 51-6 at pp. 1-18.

[146] *Id*.

[147] R. Doc. 51-6 at p. 6.

[148] *Id.* at pp. 1, 3 & 6.

[149] *Id.* at p. 6.

[150] *Id.* at p. 10.

[151] *Id.* at pp. 4, 8 & 10.

[152] Although Plaintiff asserts that he is not seeking reimbursement for the time spent by other attorneys at GSN worth less than $500, the billing records show that only 1.9 hours were written off by GSN.  *See*, R. Doc. 51-6 at pp. 1, 3, 4, 8, 11, 12, 14 & 18.

With respect to the billing records from The Derbes Law Firm, Plaintiff seeks attorney's fees for 7.4 hours billed by Melanie Mulcahy, 1.8 hours billed by Kaja S. Elmer and 0.2 hours billed by Eric J. Derbes between March 22, 2016 and December 5, 2016.[153]  As previously discussed, the Court is unable to award attorney's fees for the work performed by Elmer and Derbes because Plaintiff failed to provide any information to determine the reasonableness of their rates.  With respect to the 7.4 hours billed by Mulcahy, which do not appear to be redundant or excessive, the total amount of $1,991 billed by Mulcahy between March 22, 2016 and December 5, 2016 need not be reduced for Plaintiff's failure to exercise billing judgment.

While Plaintiff provided the total number of hours billed by his attorneys between March 22, 2016 and September 27, 2017 (159.2), the Court has determined that Plaintiff is only entitled to the attorney's fees incurred between March 22, 2016 and December 5, 2016 in connection with the prior Motion for Damages.  The billing statements submitted by Plaintiff show that five attorneys billed a total of 113.6 hours between March 22, 2016 and December 5, 2016.[154]

The lodestar amount can be adjusted up or down based on what is reasonable under the circumstances of the specific case.[155]  "In this final adjustment, the most important factor is the degree of success obtained by the prevailing party."[156]  Further, "When a party seeks attorney's fees for several claims, the general rule is that the party must 'segregate fees between claims for which they are recoverable and claims for which they are not.'"[157]  "Fees are not interrelated merely because facts are intertwined.  Rather, 'it is only when discrete legal services advance both

---

[153] R. Doc. 51-1 at p. 15; *See*, R. Doc. 51-12.

[154] R. Doc. 51-6 at pp. 1-18; R. Doc. 51-12 at pp. 2-15.

[155] *Christus Health Care Systems, Inc. v. American Consultants RX, Inc*., Civ. A. No. SA:12-CV-1221-DAE, 2014 WL 1092096, at *76 (W.D. Tex. Mar. 18, 2014) (quoting *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 793 (S.D. Tex. 2009)).

[156] *Randolph*, 634 F. Supp. 2d at 793 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

[157] *Kryptek Outdoor Group, LLC v. Salt Armour, Inc.*, Civ. A. No. 1:15-CV-348, 2016 WL 7757267, at *6 (E.D. Tex. Mar. 28, 2016) (quoting *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007)).

a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated."[158]  "If a party fails to segregate, the district court may award a percentage of fees rather than denying recovery of fees completely."[159]

In the prior Motion for Damages, Plaintiff asserted two claims against Defendant, a claim for damages/profits and a claim for attorney's fees.[160]  The prior Motion for Damages was granted in part and denied in part, with the Court denying Plaintiff's request for damages but establishing the amount of reasonable attorney's fees that had previously been awarded by the District Judge through entry of the March 22, 2016 Ruling.  It is important to note that Plaintiff was awarded less than half the fees it sought on the prior Motion for Damages.  Thus, the prior Motion for Damages was largely unsuccessful.  In light of the (repeated) failure to properly exercise billing judgment and the overall lack of success on the prior Motion for Damages, the undersigned recommends that Plaintiff be permitted to recover only 40% of the attorney's fees incurred in connection with the prior Motion for Damages.

Accordingly, Plaintiff is entitled to recover for the following hours expended by his attorneys between March 22, 2016 and December 5, 2016 in connection with the prior Motion for Damages:

| Attorney Name | Hours Billed | Multiplied by Hourly Rate | Lodestar Amount | Lodestar Reduced by 20%- Lack of Billing Judgment | Lodestar Reduced to 40%- Lack of Overall Success |
|---|---|---|---|---|---|
| Seth M. Nehrbass | 29.8 | $375 | $11,175 | $8,940 | $3576 |
| Mark N. Melasky | 74.4 | $175 | $13,020 | $10,416 | $4,166.40 |
| Melanie Mulcahy | 7 | $275 | $1,925 | No reduction | $770 |
| | 0.4 | $165 | $66 | | $26.40 |
| Total | 111.6 | | $26,186 | $21,347 | $8,538.80 |

[158] *Kryptek*, 2016 WL 7757267, at *6 (quoting *Navigant*, 508 F.3d at 298).
[159] *Kryptek*, 2016 WL 7757267, at *6 (citing *Navigant*, 508 F.3d at 298).
[160] R. Doc. 34.

As indicated above, the Lodestar amount billed by Nehrbass and Melasky from March 22, 2016 through December 5, 2016 related to Plaintiff's prior Motion for Damages was $24,195 ($11,175 + $13,020).  However, the undersigned recommends that the Lodestar amount billed by Nehrbass and Melasky be reduced by 20% (or to $19,356) for failure to exercise billing judgment.  The undersigned further finds that a total of $1,991 ($1925 + $66) in attorney's fees is reasonable for Mulcahy, who billed a total of 7.4 hours between March 22, 2016 and December 5, 2016 and exercised appropriate billing judgment.  However, the undersigned recommends that the Lodestar amount for Nehrbass, Melasky and Mulcahy be reduced to 40% to account for the lack of overall success on Plaintiff's prior Motion for Damages.  Thus, the undersigned recommends that Plaintiff be awarded $8,538.80 in reasonable attorney's fees for the time period from March 22, 2016 through December 5, 2016.[161]

---

[161] Plaintiff has suggested an intent to seek recovery of further attorney's fees in this matter (seeking judgment awarding attorney's fees "to be increased after counsel for Plaintiff accounts for time for the remainder of this litigation.") R. Doc. 51-1 at p. 15.  Plaintiff is cautioned that, to the extent Plaintiff seeks to recover additional attorney's fees for any period following December 5, 2016, appropriate billing judgment and the overall success of the current Motion for Damages should be accounted for in such analysis.

**<u>RECOMMENDATION</u>**

For the reasons set forth herein, it is the recommendation of the Magistrate Judge that Plaintiff's Motion for Damages[162] be **GRANTED in part** and **DENIED in part.**  To the extent that Plaintiff seeks reasonable attorney's fees in the amount of $48,684, the undersigned recommends that the Motion be **GRANTED in part** and that Plaintiff be awarded $8,538.80 in reasonable attorney's fees for the time period from March 22, 2106 through December 5, 2016. To the extent that Plaintiff seeks an award of $642,671.05 in damages, the undersigned recommends that the Motion be **DENIED**.

Signed in Baton Rouge, Louisiana, on May 22, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[162] R. Doc. 51.